## THE PROVIDENCE COUNTY BANK *versus* JACOB C. BENSON *et al.* and Trustees.

**W.**, being the owner of a quantity of wool, delivered it to the defendants, who were manufacturers of wool, on a written contract, which stated that he had sold, and the defendants had bought, the wool at a certain price, and that it was received by the defendants as the property of W., and was to be protected as such, but with the understanding, that the defendants were to make payments from time to time until the full value of the wool should be paid, and that the wool was to be insured, while in the defendants' mill, against fire. The defendants effected insurance, but in their own name, it being their intention to insure for W.'s benefit, and before the happening of a loss they told him they had effected a policy according to their agreement with him. No part of the price having been paid, and the wool, in different stages of manufacture, having been destroyed by fire, and the sum due from the insurers having been attached in their hands on a trustee process at the suit of a creditor of the defendants, it was *held*, that whether W. could or could not maintain an action in his own name upon the policy, he had an equitable interest in it, which was equivalent to that of an assignee of a chose in action, and sufficient to entitle him to the avails as against the attaching creditor.

ASSUMPSIT. The writ bears date the 30th of July, 1838, and was served on that day upon the Manufacturers' Mutual Fire Insurance Company as trustees of the defendants.

The trustees filed their answers, setting forth, that on the 1st of June, 1838, John C. Benson, in the name of the Millville Manufacturing Company, effected insurance, at the respondents' office, upon a quantity of " stock " in their satinett mill, finishing shop and wool warehouse, to the amount of $ 1000 ; that a part of the property insured was destroyed by fire in the night between the 28th and 29th days of July, whereby the respondents became liable to pay the amount insured thereon, viz. $ 600 ; that on the 8th of August, the respondents had notice that the policy had been assigned by the defendants to William Whitney ; and that the respondents were willing to pay the amount of the loss, if they could know to whom the same belonged.

Wh:tney became a party to the suit, (under the provisions of the statute,) and the case was submitted upon a statement of facts, by which it further appeared, that on the 1st of June, 1838, the following agreement was entered into between Whitney and the defendants ; "William Whitney has sold, and J. C. Benson, in behalf of William Capron and George P. Phelps, has bought a lot of unwashed, broken, coarse wool, supposed to contain about 7000 lbs., price twenty cents, three per cent. off for cash, which is received by said company as the property of William Whitney, and to be protected as such by us, but with the understanding, however, that we are to pay for the same in draft on good houses, not exceeding six months, date commencing with the first draft in about four or six weeks from this date, and to continue giving the said Whitney one draft a fortnight until the full value of the above wool is paid for ; and the same is to be insured while in our mill, against fire. Bags to be charged at fifty cents each. J. C. Benson, for himself, and William Capron and George P. Phelps."

About the same 1st day of June, Benson, in the name of the Millville Manufacturing Company, procured the policy of insurance before mentioned, the risk commencing on that day, and ending on the 1st of April, 1839. The Millville Manufacturing Company was a copartnership consisting of the defendants, sometimes doing business under that style, and sometimes under the style of Benson, Phelps, & Capron. The stock destroyed by the fire was a part of what had been delivered by Whitney to the defendants under the contract above set forth. On the 30th of July, 1838, but not until after the service of this writ, the defendants, by a writing on the policy, assigned the same to Whitney, authorizing him to collect it. On the 1st of August, Benson informed the respondents that the trustee process would not hold, because Whitney had a claim on the property, but he did not explain the nature of the claim. On the 8th of August, Whitney gave the respondents formal notice of the assignment of the policy, and claimed payment of the sum due thereon ; and also informed them that he had a lien upon the property destroyed, independently of the assignment of the policy. No formal permission to transfer the policy was given by the respondents, until the 8th of August, and then it was given subject to this trustee process.

Providence
County
Bank
*v.*
Benson
and Tr.

If it was competent evidence, Benson would testify, that the defendants received about 7000 lbs. of wool from Whitney, under the contract, 5000 lbs. of which were consumed by the fire ; that this was in the various stages of manufacture ; that the defendants had no other wool ; that at the time when the written contract was made, Benson agreed to have the wool insured by the respondents for the benefit of Whitney, and to keep it insured on his account ; that Benson had been in the habit of taking policies in the name of his company, and without thinking of what the difference would be, he took this policy in the same manner, with the view of assigning it to Whitney ; that at the time that Benson agreed to have the wool insured for Whitney's benefit, Whitney remarked to Benson that he should depend upon his doing it, and that he made him his agent for the purpose ; and that Benson, in effecting the insurance, regarded himself as acting for Whitney, rather than for Benson, Phelps, & Capron ; that the defendants never paid any part of the price of the wool, nor gave any drafts therefor ; that it was agreed at the time when the contract was written, that the wool should remain the property of Whitney through its various stages of manufacture, till it should be paid for by the defendants ; that it was his (Benson's) intention to insure the wool for the benefit of Whitney alone, and before it was destroyed he informed Whitney that he had insured it, and that he had effected a policy according to his agreement with Whitney.

The cause was argued in writing.

*Washburn,* in behalf of Whitney, argued that there was an equitable, verbal assignment of the policy, before the service of the trustee process ; *Ammidown* v. *Wheelock,* 8 Pick. 470 ; that the property continued in Whitney after the delivery of it to the defendants ; *Barrett* v. *Pritchard,* 2 Pick. 512 ; *Reed* v. *Upton,* 10 Pick. 524 ; that the testimony of Benson was competent, for it did not control or vary the written contract, but merely added what was a fair inference from the writing, that the property was to continue Whitney's through the various stages of manufacture, and that the insurance was to be effected by the defendants as agents of Whitney and on his account ; *Davenport* v. *Mason,* 15 Mass. R. 85 ; *Gerrish*

*v. Washburn,* 9 Pick. 338 ; *White* v. *Parkin,* 12 East, 584 ; that the testimony being admitted, the facts presented a common case of insurance effected by an agent in his own name, which enures to the benefit of the principal ; 2 Livermore on Agents, 290 ; *Gordon* v. *Church,* 2 Caines's R. 299 ; Paley on Agents, 22, 23 ; *Bell* v. *Gilson,* 1 Bos. & Pul. 345, and note ; *Mellish* v. *Bell,* 15 East, 4 ; Story on Agency, 150.

*W. Lincoln,* for the plaintiffs. The only parties to the policy are the respondents and the defendants. Where third persons are interested in the insurance, it is customary to express in the policy that it is for the benefit of such persons, or by a formal assignment to transfer the rights of the assured to those who may claim property. A different course would operate as a fraud upon the insurer and upon the creditors of the assured ; the insurers, if proceeding upon the principles of mutual assurance, might be defeated of their lien upon the property for contribution, and creditors deceived by the false exhibition of goods into extension of credit and delay in enforcing their demands.

The policy in this case shows that the insurance was made by the defendants for themselves, and not on these particular goods, but on any stock which they should have in their mill, &c. during the term of the insurance. When the loss happened, and when the plaintiffs' writ was served, the policy remained unassigned, and the plaintiffs, by their attachment, obtained all the rights which belonged to their debtors. According to the by-laws of this insurance company, made a part of the policy, the policy was not assignable " without the consent of the company expressed by indorsement thereon, signed by the president or secretary," and " the alienation, in any way, of any property insured by this company, shall, *ipso facto*, make void the policy," unless notice be given to the secretary and an assignment be made of the policy to the new owner and recorded in the company's books ; and whatever may have been the decisions in other cases, the plaintiffs believe that by the terms of this policy, the defendants agreed for themselves and all others, that the right of property was to be considered as being in themselves, and that no mode of transfer, either in law or equity, should be valid, unless it were

Providence
County
Bank
v.
Benson
and Tr.

in strict compliance with the rules of the company. And such has been the practical construction which the defendants and Whitney have themselves put upon the policy.

The testimony of Benson, to show that the property was in Whitney, was not admissible, inasmuch as it contradicts the written contract; which states a sale executed, not executory; and the sale was perfected by a subsequent delivery. For the purpose only of securing the stipulated price, it was agreed that the wool should be protected as if it were the property of Whitney. This was the creation of a mortgage; which, in order to be effectual against creditors, should have been recorded. But even if the contract was executory, the defendants had an interest on which they might effect insurance in their own names and for their own benefit. Benson's testimony would contradict likewise the policy, as it would show that the insurance was not for the defendants but for some other person.

The written contract did not constitute the defendants agents to effect the insurance. They derived no authority from it to bind Whitney to the liability for assessments, and to create the lien required by this insurance company.

April term
1840.

DEWEY J. delivered the opinion of the Court. The only question in the present case is, which of two contending claimants has the better legal right to receive of the Manufacturers' Mutual Fire Insurance Company the avails of a policy effected at that office, the supposed trustees waiving all objections as to their own liability to pay the same, and merely raising the point which of these parties may legally demand the payment thereof from them.

The policy, in its terms, purports to be solely for the benefit of the Millville Manufacturing Company, this being the copartnership name of the principal defendants, Benson and others. If the case rested here, of course the trustees would be clearly chargeable in the suit in favor of the plaintiffs. The defence taken by Whitney, who claims this money in the hands of the insurance company, is put on two grounds:

1. That Benson and others, who procured the insurance, were acting as his agents and in his behalf, and that in law it is to be holden as made for his benefit, and may be enforced by him in his own name.

2. That if the policy was so made, that the legal interest in the same was in Benson and others, yet inasmuch as it was ef- fected for the benefit of Whitney, and in pursuance of an agreement with him by Benson & Co., and notice had been given to Whitney previously to the loss, that such insurance had been effected for his benefit, it was an equitable assignment of the policy to Whitney to secure him in case of loss of the property by fire, and as such assignee, he should be protected against this trustee process.

It becomes material to consider in whom was the legal property in the stock insured, at the time the insurance was effected. The counsel for Whitney contend, that the contract as to the wool between Whitney and Benson, was a mere executory agreement, and the property would only pass to Benson and others upon payment for the wool in the manner stipulated in the written contract ; while the plaintiffs contend, that the contract was an executed one, and the property immediately upon delivery vested in Benson and others.

It seems to the Court, that applying the principles of law as they have been ruled in several cases, to the terms of this contract, the effect of it must be taken to be, that the property in the wool remained in Whitney, and that he might well have insured in his own name his interest in the wool. It was not, however, thus insured, but the policy was issued in the name of the Millville Manufacturing Company. This, it is said, being the act of an agent, although in his own name, will enure to the benefit of the principal. Admitting the general doctrine to be, that an insurance effected by an agent in his own name would be legally available to the principal in his own right, it may still be questionable whether the present insurance was not procured by the agency of a party having a more direct interest in the property and in the policy than that of a mere agent, and whether it was not taken for such a term of time and under such circumstances as might render it a valid policy to cover for the defendants other risks than that of the stock of Whitney.

In the view the Court have taken of this case, however, we have not considered it necessary to decide whether an action might be maintained by Whitney in his own name upon this

Providence
County
Bank
v.
Benson
and Tr.

policy. If the policy was effected by the defendants, and the legal interest was originally in them, so that it might have been properly the subject of a trustee process, yet it is also true, that if the debtor has, previous to the service of the trustee process, in good faith assigned his interest or right to a third person, although such assignment is not effectual at law so far as to authorize the assignee to maintain an action in his own name, it may be a good assignment in equity, and one which a court of law will protect. Such assignments are now recognised by statute as a good bar to an attachment by the trustee process, and provision is made to enable the assignee to come in, and by proof sustain the validity of his assignment, and thus defeat the trustee process.

We are, then, brought to the inquiry, whether there was an equitable lien on this policy acquired by Whitney before the service of the trustee process.

Upon recurring to the facts, it appears that Whitney made a contract with Benson and others in relation to the wool, the effect of which was, that Whitney still retained an interest in the same during the process of manufacturing it. Benson agreed to procure an insurance on the same for the benefit of Whitney, and he testifies that he effected this policy in pursuance of that agreement, and for that object. After the making of the policy, and before the loss, and before the service of the writ in this case, Benson informed Whitney that he had effected an insurance for his benefit, pursuant to the stipulation he had entered into with him. Here was, therefore, an express understanding and agreement between these two parties, that this insurance was to enure to the benefit of Whitney, and it seems to us that whether the policy was so made as to authorize Whitney to maintain an action in his own name or not, he is clearly shown to have had an equitable interest in it which is equivalent to that of an assignee of a chose in action, and is sufficient to enable him to hold the avails of the same as against this trustee process, instituted for the benefit of an attaching creditor.

*Trustees discharged.*